NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

JEFFREY RECKLING,

          Appellant,

   v.

MICHAEL I. OKECHUKU,

          Appellee.

CIVIL NO. 07-1699 (GEB)

MEMORANDUM OPINION

**BROWN, Chief District Judge**

    This matter comes before the Court upon Appellant Jeffrey Reckling's (hereinafter "Appellant" or "Reckling") appeal of United States Bankruptcy Judge Donald H. Steckroth's January 17, 2007 Letter Opinion and accompanying Order denying Appellant's underlying motion seeking to vacate the entries of default and default judgment. The action was reassigned to the undersigned on June 15, 2007, and the Court, having read and fully considered all of the parties' submissions, has decided this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons discussed in this Memorandum Opinion, the underlying Letter Opinion and Order of the Bankruptcy Court dated January 17, 2007 is affirmed.

**I.    BACKGROUND**

    On June 2, 2003, North East Communications, Inc. (hereinafter "Debtor") filed for bankruptcy pursuant to Chapter 7 of Title 11 of the United States Bankruptcy Code. (Appellant's Brief, p. 3; Appellee's Brief, p. 5). Debtor retained legal representation to assist in the bankruptcy filing. The attorney hired to assist Debtor in filing its Chapter 7 bankruptcy petition

was attorney Robert A. Drexel (hereinafter "Drexel"). (Appellant's Brief, pp. 2-3). Appellant Reckling was considered a principal of Debtor, as he was both an officer and shareholder of Debtor. After the Chapter 7 bankruptcy petition was file, the Bankruptcy Court appointed a trustee, Michael Okechuku, to administer the Debtor's bankruptcy case (hereinafter "Trustee" or "Appellee"). (Appellant's Brief, p. 3). The Trustee retained Becker Meisel LLC as counsel (hereinafter "Becker"). (Appellee's Brief, p. 5).

Thereafter, the Trustee began to review financial statements of the Debtor. (*Id.*). During the review, it was discovered that two separate loans were allegedly given to Reckling by Debtor in the amounts of $13,650 and $34,080.69, respectively. (*Id.*). The financial statements in question were entitled "Officer Loans." (*Id.*).

On September 27, 2004, Becker deposed Reckling during a Rule 2004 examination. Drexel defended on behalf of Reckling, but made it clear that he was only appearing on Reckling's behalf as a principal of the Debtor, not for Reckling in an individual capacity. (Appellant's Brief, p. 4, fn. 1). During the deposition, Reckling denied receipt of any loans from Debtor, and promised to conduct an inquiry about the loan entries the Trustee had discovered. (*Id.* at p. 4).

Drexel made subsequent inquiries regarding the loans. (Appellee's Brief, p. 5). In or about October, 2004, Drexel contacted Becker and relayed information Drexel had obtained from Debtor's accountant. Specifically, Drexel informed Becker that the Debtor did not extend the loans in question, but rather, that the loan statements were crafted "for business purposes, in part to enhance company value by showing a loan receivable asset." (*Id.*).

The parties differ as to what happened next. Appellee states that despite Drexel's explanation of the loan statements, Becker wrote to Drexel on December 29, 2004, to inform Drexel that the Trustee believed the loan statements were valid. (*Id.* at 6). Appellant states that at a holiday party in December of 2004, Becker informed Drexel that the Trustee would "abandon the claims against Reckling." (Bankruptcy Court Letter Opinion, p. 3 citing to Drexel Certification; Appellant Brief, p. 5).

On March 30, 2005, Becker wrote to Drexel, advising him that adversary proceedings were going to commence against Reckling absent a letter demonstrating that Appellant was financially unable to repay the loans which would make "such a proceeding a[n] [un]worthwhile endeavor for the bankruptcy estate . . ." (*Id.* at p. 6, citing Record I).

On April 4, 2005, Drexel responded to Becker's March 30, 2005 correspondence, acknowledging receipt of said correspondence, as well as three phone calls Becker made to Drexel regarding the loan statements, and stating that he did not believe a letter from Reckling was necessary. (*Id.*).

"Shortly thereafter," Drexel and Becker contacted each other to discuss what information the Trustee sought. (*Id.*). During the course of the conversation, Becker stated that the Trustee was requesting a certified personal financial statement from Reckling. Drexel informed Becker that Reckling did not have the finances to have such a statement prepared. Becker responded by requesting that Drexel "provide Becker Meisel with whatever information Reckling had that may assist in gauging whether an adversary proceeding would be worthwhile . . ." (*Id.*). However, no information was ever provided to either Drexel or Reckling. (*Id.*).

Communication thereafter ceased between Drexel and Becker, and on June 1, 2005, the Trustee filed the underlying adversary action. (Appellee Brief, p. 7). Two days later, Becker spoke with Drexel regarding service, at which time Drexel consented to accept service of process on Reckling's behalf. (*Id.*). Becker thereafter had the original summons and complaint served upon Drexel's law firm via New Jersey Lawyers' Service, which was signed for on June 10, 2005 by an employee. (*Id.*).[1]

No answer or other motion was provided by Reckling or Drexel after the complaint was served. (*Id.*). On August 12, 2005, Becker contacted Drexel to advise him that a scheduled pre-trial conference had been adjourned, as well as to remind Drexel that Reckling was in default. (*Id.*).

On September 16, 2005, in response to Reckling's continued failure to respond to the filed complaint, the Trustee filed a request for default. (*Id.* at p. 8). On September 22, 2005, the Trustee filed an application for default judgment. A copy of that application was forwarded to Drexel. The Bankruptcy Court entered judgment by default on December 13, 2006, in the amount of $48,880.69. (*Id.*).

On January 24, 2006, Becker sent a letter to Drexel asking whether Drexel "still represented" Reckling, and asking if Reckling would consent to voluntarily paying the amount of the judgment in the interest of avoiding the costs and time associated with collection proceedings. (*Id.*). "Multiple conversations between [] Drexel and [Becker] ensued. At no time did [] Drexel mention that he did not represent [Reckling], or that he was not authorized to

---

[1] Appellant asserts that he had had no contact with Drexel since December of 2004. Appellant further asserts that he had not authorized Drexel to accept service on his behalf, but that Drexel accepted service nonetheless. (Appellant Brief, p. 5).

-4-

accept service on [Reckling's] behalf." (Bankruptcy Court's Letter Opinion, p. 4).

On May 24, 2006, Reckling retained his current counsel and moved to vacate the default judgment. (Appellee Brief, p. 8). It was during the motion to vacate the default that Reckling asserted that he was allegedly unaware of the adversary proceeding or the default judgment until he received the Trustee's letter of January 24, 2006, eight months after the complaint was filed. (Bankruptcy Court's Letter Opinion, p. 4). It was an additional four months from the time Reckling allegedly learned of the adversary proceeding and default judgment before Reckling hired his current counsel. (*Id.*).

Prior to the aforementioned events, Drexel represented Reckling in another adversary proceeding. Specifically, prior to the filing of Debtor's bankruptcy petition, Drexel "endeavored to protect Reckling's interests" in a Chapter 7 proceeding filed by Giant Ventures LLC in the Central District of California. (Appellee Brief, p. 7; Bankruptcy Court's Letter Opinion, p. 3). In that proceeding, a different court-appointed trustee filed an adversary proceeding against Reckling. In two letters dated June 20, 2003 and April 8, 2004, Drexel "negotiated" a consensual extension of time to answer the adversary complaint and tried to settle the claims that the trustee had made against Reckling. (*Id.*). On December 23, 2004, Drexel informed Reckling via written correspondence that the California complaint against Reckling was going to be dismissed, and that Drexel "would retain $2,500 against fees and expense in the Giant Ventures case and in the Northeast Communications case in which Michael Okechuku is the Trustee [the instant case and Trustee]." (Appellee Brief, pp. 7-8, citing Record I, Ex. 10, Exhibit B; Bankruptcy Court's Letter Opinion, p. 3).

On May 26, 2006, Appellant Reckling, with his most recently obtained attorney, filed a motion with the Bankruptcy Court seeking to reopen the underlying adversary proceeding. Reckling argued to the Bankruptcy Court that the default judgment was either void pursuant to F.R.Civ.P. 60(b)(4) for failure to be properly served and/or that the default judgment was voidable for excusable neglect pursuant to F.R.Civ.P. 60(b)(1).

On January 17, 2007, the Bankruptcy Court issued a Letter Opinion and Order.  The Bankruptcy Court held, in sum and substance, that the totality of the circumstances were such that "at the very least" an implied attorney-client relationship existed between Drexel and Reckling to cause an effected valid substituted service.  (Bankruptcy Court's Letter Opinion, p. 8).  The Bankruptcy Court further held that Drexel's conduct failed to constitute excusable neglect, in that he was actively seeking to settle the claims against Reckling, as well as attempting to obtain a voluntary withdrawal of the default judgment.  (*Id.* at p. 9).

**II.     ISSUES PRESENTED**

Appellant Reckling argues that the issues before this Court, in relevant part, are: 1) whether the Bankruptcy Court erred in denying his motion to vacate the default judgment when service was not perfected; and 2) whether he was required to show excusable neglect when he was never personally served with a copy of the summons and complaint in the underlying action.

Appellee argues, with regard to the first issue presented by Appellant, that the phrasing suggests that Appellee never perfected service.  Appellee asserts that the issues for consideration are more properly framed as follows: 1) whether the Bankruptcy Court correctly held that Drexel acted as Appellant's implied agent for purposes of service of process; and 2) whether the Bankruptcy Court correctly held that Appellant's failure to defend the adversary proceeding did

not stem from excusable neglect.

As discussed, *supra*, Drexel stated that he was authorized to accept service, and did so. As will be discussed, *infra*, if Drexel was truly serving as Reckling's agent, either expressly or impliedly, then Drexel's acceptance of service perfected said service. Therefore, the issues before this Court shall be codified as follows: 1) whether the Bankruptcy Court properly held that Drexel's efforts on behalf of Reckling resulted in, "at the very least", an implied attorney-client relationship, which if so would constitute valid substituted service pursuant to Rule of Bankruptcy Procedure 7004; and 2) whether the Bankruptcy Court properly held that reversal of the entry of default was warranted under F.R.Civ.P. 60(b)(1)

II.     **DISCUSSION**

   A.     <u>**Standard of Review**</u>

Bankruptcy Rule 8013 provides, in pertinent part: "On appeal the district court . . . may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of witnesses." "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conclusion that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948). A bankruptcy court's conclusions of law, on the other hand, are subject to plenary review. *See Brown v. Pennsylvania State Employees Credit Union*, 851 F.2d 81, 84 (3d Cir. 1988). Where mixed questions of law and fact are presented, the appropriate standard must be applied to each component of the appeal.

*See In re Sharon Steel Corp.*, 871 F.2d 1217, 1222 (3d Cir. 1989).

> **B.** **The Bankruptcy Court did not Err in Finding that Drexel's Actions Created an Implied Attorney-Client Relationship with Appellant**

As clearly laid out by the Bankruptcy Court and Appellee, issues of service are guided by Federal Rule of Bankruptcy Procedure 7004, which in turn incorporates F.R.Civ.P. 4(e)(2), which provides, in relevant part:

> Unless otherwise provided by federal law, service upon an individual from whom a waiver has not been obtained . . . may be effected in any judicial district of the United States . . . by delivering a copy of the summons and of the complaint to the individual personally . . . or by delivering a copy of the summons and of the complaint to an agent authorized by appointment or by law to receive service of process.

Bankruptcy Rule 7004 itself provides, in pertinent part, as follows:

> [service] is also sufficient if a copy of the summons and complaint is mailed to an agent of such defendant authorized by appointment or by law to receive service of process, at the agent's dwelling house or usual place of abode or at the place where the agent regularly carries on a business or profession and, if the authorization so requires, by mailing also a copy of the summons and complaint to the defendant as provided in this subdivision.

As such, service may be perfected by having an agent served at his place of business. The question then becomes whether Drexel was indeed Appellant's agent at the time he accepted service on Appellant's behalf.

Generally, an attorney does not necessarily become an agent authorized in every instance to receive service of process on behalf of an individual whom they represent. *United States v. Bosurgi*, 343 F.Supp. 815, 817 (S.D.N.Y. 1972). However, service on the attorney is effective as to the client if the attorney is expressly or impliedly authorized to accept service for the client. *Id.* at 817; *United States v. Marple Community Record, Inc.*, 335 F.Supp. 95, 101 (E.D.Pa. 1971); *In re Spirco, Inc.*, 201 B.R. 744, 751 (Bkrtcy. W.D.Pa. 1996) (overrruled on other grounds).

-8-

Implied authority can be inferred from the particular conduct in question, and from the particular circumstances in the case. *Henningsen v. Bloomfield Motors*, 32 N.J. 358, 374 (1960); *Carlson v. Hannah*, 6 N.J. 202, 212 (1951); *In re The Muralo Co., Inc.*, 295 B.R. 512, 518 (Bankr. D.N.J. 2003) (holding that if an agency is to be implied, all circumstances accompanying attorney's appointment and actions on behalf of his client must be considered); *U.S. v. Ziegler Bolt & Parts, Co.*, 111 F.3d 878, 881 (Fed. Cir. 1997) (holding that an agent's authority to accept service may be implied).

Here, as particularly discussed above, and as noted by the Bankruptcy Court, Drexel operated as Appellant's agent throughout the entire time frame in question.  Specifically, the Trustee's counsel communicated directly and frequently with Drexel regarding the proposed loans to Appellant.  At no time during the relevant period did Appellant indicate that communications with Drexel should cease.  Appellant made no attempt to obtain different counsel until four months after the attempt to set aside the default failed.  Appellant never attempted to personally contact the Trustee or his counsel, but rather, clearly relied upon Drexel to handle the situation.  Drexel acted, at all times, as Appellant's agent, including during Appellant's deposition, as well as during settlement negotiations, and for service, as Drexel expressly consented to accept service of the underlying adversary proceeding on Appellant's behalf.

Moreover, Drexel had and was representing Appellant in another proceeding virtually identical to the instant underlying adversary proceeding, resulting in at least one communication between Drexel and Appellant in which both proceedings were discussed at the same time and in the same context, and in which services were billed collectively.

Taken as a whole, the facts clearly support the conclusion that Appellant did indeed rely upon Drexel as his agent up to a point after a default judgment was entered against him. When that occurred, Appellant released Drexel and obtained new counsel and asserted a contention that service was not perfected as Drexel was not authorized to accept service.

The Court therefore concludes that all of the above circumstances surrounding Drexel and Appellant clearly support the Bankruptcy Court's finding that Drexel was an agent of Appellant, and as such was authorized to accept service as said agent on Appellant's behalf. The Bankruptcy Court's determination is neither clearly erroneous nor contrary to the law and is hereby affirmed.

>   **C.   The Bankruptcy Court did not Err in Finding that Drexel's Conduct did not Constitute Excusable Neglect under F.R.Civ.P. 60(b)(1)**

Federal Rule of Civil Procedure 60(b)(1), as made applicable to bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 9024, provides, in relevant part:

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect . . ."

In determining whether a party may obtain relief under F.R.Civ.P. 60(b)(1), this Court must consider: (1) whether the default occurred as a result of said party's culpable conduct; (2) whether the opposing party would be prejudiced if the default was vacated; and (3) whether the party has a meritorious defense. *Zawadski de Bueno v. Bueno Castro*, 822 F.2d 416, 419-20 (3d Cir. 1987).

1.      **Excusable Neglect**

*Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993) is the guidepost for the excusable neglect standard. Specifically, the Supreme Court in *Pioneer* held:

> Because Congress has provided no other guideposts for determining what sorts of neglect will be considered 'excusable', we conclude that the determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission. These include . . . the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.

Further, lawyer's errors, the type which usually provide for "successful malpractice suits by the injured client" do not fall under the excusable neglect standard. *McCurry v. Adventist Health System/Sunbelt, Inc.*, 298 F.2d 586, 595 (6th Cir. 2002).

In the instant appeal, the facts demonstrate that there was no mistake or innocent error. Drexel negotiated on Appellant's behalf for a lengthy period. Drexel was asked to accept service, to which he agreed. Drexel was verbally notified that he was late in responding to the adversary proceeding, yet still failed to respond to it in any fashion. Only then was a default entered. This error cannot be averted by claiming excusable neglect. *Id.* As such, the Bankruptcy Court did not err in concluding that Drexel's failure to respond to the underlying adversary action did not constitute excusable neglect. The Bankruptcy Court is affirmed.

2.      **Meritorious Defense**

Appellant asserts that he has a meritorious defense in that he submitted a certification that asserts that he never received loans from the Debtor, and that the Debtor's accountant, in 2004, stated that no loans were provided to Appellant.

"The showing of a meritorious defense is accomplished when 'allegations of [the] defendant's answer, if established [at] trial, would constitute a complete defense to the action.'" *$55,518.05 in U.S. Currency*, 728 F.2d 192, 195 (3d Cir. 1984) (citing *Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242, 244 (3d Cir. 1951). A court must assess the merits of the proposed defense to determine whether it can operate as a complete bar to liability. *Id.* The defendant must carry the burden of showing with some "specificity" for the defense. *Harad v. Aetna Cas. & Sur. Co.*, 839 F.2d 979, 982 (3d Cir. 1988).

Here, taking into consideration Appellant's defense, and the evidence he provides in support of said defense, this Court cannot conclude that Appellant has provided a "complete" defense. Certainly, Appellant's statement that he did not receive funds from Debtor in and of itself provides absolutely no basis of a defense. While he relies on the statement of Debtor's accountant, who asserted that no loans were provided to Appellant, nevertheless, there are indeed records of the Debtor that provide that loans were provided to Appellant. Further, Appellant continues to refuse to provide any financial documentation of his own personal accounts. This is a concern for the Court, and would most likely be one for any sitting jury. If Appellant did not receive any loans from Debtor, would it not be compelling evidence to provide bank statements and statements of purchases, if any, to show an absence of deposits for those amounts in or around that time. Nevertheless, Appellant fails to so provide, to the Trustee when he inquired and to the Bankruptcy Court in support of his motion to vacate the default judgment.

The Court therefore concludes that the evidence provided, without more, fails to demonstrate a "complete" defense. The Bankruptcy Court is affirmed.[2]

---

[2] The prejudice to the Trustee if the default judgment were reversed is self evident. To force the Trustee to go back to the beginning as it were, to refile the complaint and again attempt

IV.  CONCLUSION

       For the reasons discussed above, the Bankruptcy Court's January 17, 2007 Letter Opinion and Order is affirmed in all respects.  An appropriate form of order is filed herewith.


                        s/Garrett E. Brown, Jr.
                        **HONORABLE GARRETT E. BROWN, JR.**
                        **CHIEF UNITED STATES DISTRICT JUDGE**

---

to have Appellant respond and cooperate with discovery is most burdensome to the Trustee, and disrupts the finality of the judgment entered.